```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

___

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-cr-20058-SHM-tmp |
| | ) | |
| **AUGUST HINDS,** | ) | |
| | ) | |
| Defendant. | ) | |

___

### REPORT AND RECOMMENDATION
___

Before the court by order of reference is defendant August Hinds's Motion to Suppress Evidence, filed on July 12, 2017. (ECF No. 22.) The United States filed a response on August 4, 2017. (ECF No. 26.) For the following reasons, it is recommended that the motion be denied.

### I. PROPOSED FINDINGS OF FACT

For the limited purpose of resolving the present motion, the parties agree that the following facts are not in dispute.[1] This

___

[1] The parties appeared for a conference on August 30, 2017, at which time they stated that an evidentiary hearing would not be necessary and that they would instead rely on the briefs as submitted. (ECF No. 31.) However, Hinds informed the court that he wanted to obtain discovery, or alternatively secure a stipulation, from the government to establish that neither the FBI nor the Department of Justice examined Federal Rule of Criminal Procedure 41(b) in connection with the underlying investigation to determine whether the magistrate judge had authority to issue the Network Investigative Technique warrant. Hinds's Motion to Compel Evidence was subsequently referred to the undersigned magistrate judge. The

case stems from a nationwide federal investigation into an online child pornography website. In 2014, an undercover agent with the FBI learned about "Playpen" – an online forum that promoted the trafficking of child pornography. (ECF No. 22 at 2; No. 26 at 2.) Playpen relied on "The Onion Router" or "Tor" technology to mask its users' locations and ensure anonymous access to its illicit content. (ECF No. 22 at 3; No. 26 at 2.) However, the anonymizing feature of Tor was inadvertently disabled in December 2014, allowing investigators temporarily to determine the true physical location of the server. (ECF No. 26 at 2.) Investigators subsequently identified and arrested Playpen's administrator and gained control of the website. (ECF No. 22 at 2.) In order to locate and apprehend the site's users, investigators obtained authorization to place a copy of the Playpen website on a government-controlled server in the Eastern District of Virginia and to operate it for up to 30 days. (ECF No. 22 at 2; No. 26 at 3.) The Tor technology nonetheless remained in place on the server, rendering its users' locations and other identifying information anonymous and untraceable. (ECF No. 22 at 3; No. 26 at 3.) To circumvent the Tor anonymizing technology, investigators sought to install their own Network Investigative Technique ("NIT") technology on the server. (ECF No. 22 at 3; No. 26 at 3.) Once installed, the NIT technology would send communications to any

---

motion was denied by order entered on November 20, 2017.

computer that accessed the Playpen server. (ECF No. 22 at 3; No. 26-4 at 20.) That communication would force the user's computer to transmit back to the government server certain identifying information, such as the computer's Internet Protocol ("IP") address, the date and time of access, and the type of operating system being used. (ECF No. 22 at 3; No. 26-4 at 20.)

Prior to installing the NIT technology and collecting the above information, investigators applied for a search warrant (the "NIT warrant"). (ECF No. 22 at 5; No. 26 at 4.) The NIT warrant specifically stated that information could be collected from any computer that accessed the Playpen server, i.e., without a territorial limitation. (ECF No. 22 at 5.) A federal magistrate judge in the Eastern District of Virginia authorized the NIT warrant on February 20, 2015. (ECF No. 22 at 1-2.) Thereafter, investigators operated the Playpen server (augmented by the NIT technology) for approximately fourteen days and collected the relevant information, including the IP address, username, and date and time of access, of computers that accessed the site. (ECF No. 22 at 2; No. 26 at 3.) Investigators identified one user named "lovemuffin" and served a subpoena on Comcast, requesting information relating to the IP address associated with the account. (ECF No. 22 at 6.) The subpoena revealed a physical address in Memphis, Tennessee. (ECF No. 22 at 6; No. 26 at 4.) Investigators identified August Hinds as a resident of this address and obtained

-3-

a search warrant for the residence from a federal magistrate judge in the Western District of Tennessee. (ECF No. 22 at 6; No. 26 at 4.) The FBI executed the warrant on September 3, 2015, and seized a computer, a cell phone, thumb drives, CDs, and DVDs. On March 8, 2017, a federal grand jury in the Western District of Tennessee returned a one-count indictment charging Hinds with accessing a website and server with the intent to view child pornography. (ECF No. 1.)

## II. PROPOSED CONCLUSIONS OF LAW

Hinds moves to suppress all evidence seized and statements made as a result of the NIT warrant.[2] He argues that the magistrate judge in the Eastern District of Virginia lacked authority under the Federal Magistrates Act, 28 U.S.C. § 636(a), and Federal Rule of Criminal Procedure 41(b) to issue the warrant, rendering the warrant void *ab initio*. He further argues that the good-faith exception under United States v. Leon, 468 U.S. 897 (1984), should not apply.

The Federal Magistrates Act provides, in part, as follows:

> Each United States magistrate judge serving under [the Act] shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law —

---

[2]Hinds does not challenge the validity of the search warrant issued for his residence by the magistrate judge in the Western District of Tennessee, other than to argue that the evidence seized and statements made after execution of that warrant are fruits of the allegedly unlawful NIT warrant. See generally Wong Sun v. United States, 371 U.S. 471 (1963).

-4-

>     (1) all powers and duties conferred or imposed
>     . . . by the Rules of Criminal Procedure for
>     the United States District Courts[.]

28 U.S.C. § 636(a)(1).  Rule 41(b) of the Federal Rules of Criminal Procedure, in turn, grants a magistrate judge authority to issue warrants "to search for and seize" persons and property within the district in which the magistrate judge sits.  Rule 41(b)(4) provides a magistrate judge with authority to issue a warrant to install within the district a "tracking device" so that law enforcement can track the movement of a person or property within and outside the judicial district.[3]

Hinds's case is one of many similar prosecutions that have been brought in federal districts across the nation based on evidence seized as a result of the same NIT warrant.  Although the Court of Appeals for the Sixth Circuit has not yet addressed a challenge to the validity of the NIT warrant, more than fifty decisions involving motions to suppress challenging the NIT warrant have been issued by appellate and district courts, including several from district courts within the Sixth Circuit.  With only

---

[3]Effective December 1, 2016, Rule 41(b) was amended to add subsection (b)(6), which provides in part as follows:

> a magistrate judge with authority in any district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district if . . . the district where the media or information is located has been concealed

-5-

one exception, every motion to suppress has been denied, either at the district court level or subsequently on appeal to the Court of Appeals.  See United States v. Moorehead, 1:15-cr-10077-STA-1 (W.D. Tenn. June 6, 2017) (Anderson, C.J.) (surveying then-current state of the case law involving challenges to NIT warrant and denying motion to suppress); see also United States v. Kim, No. 16-cr-191, 2017 WL 5256753, at *4-5 (E.D.N.Y. Nov. 10, 2017) (denying motion to suppress and finding good-faith exception applied to NIT warrant, even assuming warrant violated Rule 41 and was void *ab initio*); United States v. Grisanti, No. 4:16-cr-00018-TWP-VTW, 2017 WL 4650871, at *6 (S.D. Ind. Oct. 17, 2017) (finding that although NIT warrant exceeded the magistrate judge's jurisdictional authority, suppression was not warranted under the good-faith exception); United States v. Brooks, No. 16-cr-6028, 2017 WL 4641258, at *3 (W.D.N.Y. Oct. 16, 2017) (adopting Report and Recommendation and denying motion to suppress based on challenge to NIT warrant); United States v. Leonard, No. 17-cr-135, 2017 WL 4478330, at *4 (E.D. Va. Oct. 6, 2017) (denying defendant's motion to suppress based in part on the good-faith exception); United States v. Eqal, No. 5:17-32-KKC, 2017 WL 4150467, at *6 (E.D. Ky. Sept. 19, 2017) (finding good-faith exception applied to NIT warrant); United States v. Halgren, No. SA-16-Cr-008-XR, 2017 WL 3741558, at *3 (W.D. Tex. Aug. 30, 2017) (same); United States v.

---

through technological means . . . .

Carlson, No. 16-317 (JRT/FLN), 2017 WL 3382309, at *8 (D. Minn. August 7, 2017) (same); United States v. Wheeler, No. 1:15-Cr-390-MHC-JFK, 2017 WL 3589564, at *4 (N.D. Ga. August 21, 2017) (same). But see United States v. Arterbury, No. 15-CR-182 (N.D. Okla. Apr. 25, 2016).

Three appellate courts have reviewed challenges to the NIT warrant, and in each case, the court concluded that Leon's good-faith exception applied and that suppression was not warranted. See United States v. Levin, 874 F.3d 316 (1st Cir. 2017); United States v. Horton, 863 F.3d 1041 (8th Cir. 2017); United States v. Workman, 863 F.3d 1313 (10th Cir. 2017).  In Workman, the district court had granted the defendant's motion to suppress, finding that the magistrate judge lacked authority to issue the NIT warrant and that the Leon good-faith exception did not apply because the warrant was void *ab initio*.  On appeal, the Tenth Circuit reversed the district court's decision.  The court assumed without deciding that the magistrate judge lacked authority to issue the warrant and that the resulting search was unconstitutional or a prejudicial violation of federal law or a federal rule.  Workman, 863 F.3d at 1317.  Nevertheless, the court found that the Leon good-faith exception applied even if the magistrate judge had exceeded geographic constraints in issuing the NIT warrant.  Id. at 1318 (citing Herring v. United States, 555 U.S. 135 (2009); Arizona v. Evans, 514 U.S. 1 (1995)).  The Tenth Circuit explained that:

-7-

> In Herring and Evans, the absence of a valid warrant did not preclude application of the Leon exception because there was no misconduct to deter. Here too there was nothing to deter if the agents had mistakenly relied on the magistrate judge's authority to issue the warrant. As a result, Herring and Evans would require us to apply the Leon exception even if we were to conclude that the warrant had exceeded geographical constraints.
>
> . . . .
>
> For purposes of our discussion, we assume (without deciding) that the extraction of data from a user's computer in another district would violate the Federal Magistrates Act and the Federal Rules of Criminal Procedure. But if a violation took place, it has escaped the notice of eight federal judges who have held that the same warrant complied with federal law and the federal rules even though data was being extracted from computers outside the Eastern District of Virginia.
>
> These eight federal judges would have been mistaken if the warrant here were invalid. But executing agents could reasonably have made the same mistake and reasonably relied on the magistrate judge's decision to issue the warrant. Thus, the district court erred in granting the motion to suppress.

Id. at 1321 (internal citations and footnotes omitted).

In Horton, the Eighth Circuit agreed with the district court's finding that the issuance of the NIT warrant by the magistrate judge was in violation of Rule 41, was void *ab initio*, and was a violation of "constitutional magnitude." Horton, 863 F.3d at 1048-49. Nonetheless, the court, relying on the Sixth Circuit's decision in United States v. Master, 614 F.3d 236 (6th Cir. 2010), concluded that Leon could apply to a warrant found to be void *ab initio*. Horton, 863 F.3d at 1050. The court held that Leon applied because there was no evidence of bad faith on the part of

-8-

law enforcement and, furthermore, "[b]ecause Rule 41 has been updated to authorize warrants exactly like this one, there is no need to deter law enforcement from seeking similar warrants." Id. at 1052. The court concluded that the marginal benefit of deterrence failed to outweigh the associated costs, and accordingly suppression was not warranted. Id.

In Levin, the district court had found that the NIT warrant was issued without jurisdiction and was void *ab initio* because it authorized a search of property located outside of the Eastern District of Virginia. Levin, 874 F.3d at 321. The district court held suppression was warranted because the violation of Rule 41(b) was substantive, not technical. Id. The district court opined that the good-faith exception did not apply because the search was conducted pursuant to a warrant that was void *ab initio*. Id. The First Circuit vacated and remanded the district court's decision:

> Thus, we are unpersuaded that there was any bad faith on the part of the executing officers. The officers acted pursuant to the warrant. To the extent that a mistake was made in issuing the warrant, it was made by the magistrate judge, not by the executing officers, and the executing officers had no reason to suppose that a mistake had been made and the warrant was invalid. . . . Therefore, because the government acted in good faith reliance on the NIT warrant, and because the deterrent effects on law enforcement do not outweigh the great cost of suppressing the resulting evidence, suppression is not warranted.

Id. at 323.

In addition to these appellate cases, a district judge from this court has also held that the good-faith exception applies to

-9-

the NIT warrant.[4]  See Moorehead, 1:15-cr-10077-STA-1 (W.D. Tenn. June 6, 2017).  In denying the motion to suppress filed in Moorehead, Chief U.S. District Judge S. Thomas Anderson reasoned as follows:

> A majority of courts, including five district courts within the Sixth Circuit, have either held that the NIT warrant violated Rule 41(b) or assumed without deciding that the NIT warrant violated Rule 41(b) and then went on to conclude that the good faith exception applied and that suppression was therefore unnecessary.
>
> A small number of courts have also rejected the theory that the NIT warrant and/or the government's operation of the website was so outrageous that law enforcement's conduct violated due process.
>
> Only a minority of courts have concluded that the NIT warrant violated Rule 41(b) and required the suppression of the evidence obtained through the NIT.
>
> Several courts, including three district courts in the Sixth Circuit, have concluded that the NIT was the functional equivalent of a tracking device, and so Rule 41(b)(4) authorized the Magistrate Judge to issue the NIT warrant.
>
> The Court finds this line of decisions persuasive. Federal Rule of Criminal Procedure 41(b)(4) adopts the definition of a "tracking device" found in 18 U.S.C. § 3117(b) where "tracking device" is defined as "an electronic or mechanical device which permits tracking of movement of a person or object."  See Fed. R. Crim. P. 41(a)(2)(E); 18 U.S.C. § 3117(b).  The language of section 3117(b) is certainly broad and elastic enough to include the NIT, an "electronic . . . device" capable of "tracking . . . movement . . . of an object," to wit, the movement of information via the internet.  This is precisely the kind of conduct with which the indictment charges Defendant: possessing a computer containing

---

[4]Because Chief Judge Anderson's order in Moorehead is unavailable on WestLaw and Lexis, the undersigned has included a large portion of the text from that opinion in this Report and Recommendation.

-10-

images of child pornography where the images had been transmitted over the internet, a facility of interstate commerce, in violation of 18 U.S.C. § 2252(a)(4)(B) . . . .

What is more, the use of the NIT comports with Rule 41(b)(4)'s exception authorizing a magistrate judge to order the use of a tracking device. The Rule operates to permit searches by electronic means to track criminal activity that has some nexus with the magistrate judge's district but where the evidence of a crime, including the perpetrator of the crime, may be found beyond the magistrate judge's district. In this case [], the source of the child pornography allegedly accessed by Defendant in the Western District of Tennessee, was located in the Eastern District of Virginia. . . . The Magistrate Judge arguably had authority under Rule 41(b)(4) to issue the NIT warrant to track the illegal possession and receipt of child pornography shared online.

In the final analysis, the Court need not decide whether the NIT warrant ran afoul of Rule 41(b) or 28 U.S.C. § 636 generally. Even if Defendant could show that the Magistrate Judge exceeded her authority in issuing the NIT warrant, Defendant has not shown why suppression of the evidence against him is required. In United States v. Leon, 468 U.S. 897 (1984), "the Supreme Court held that the Fourth Amendment exclusionary rule does not apply when police officers rely in good faith on a warrant that is ultimately determined to lack probable cause." . . . Defendant has made none of these showings here.

Moreover, a violation of the Fourth Amendment without more does not automatically result in the exclusion of the evidence. Suppression should "deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence" and in particular "police rather than judicial misconduct." "[T]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." The Sixth Circuit has remarked that "[a]rguably, the issuing magistrate's lack of authority has no impact on police misconduct, if the officers mistakenly, but inadvertently, presented the warrant to an incorrect magistrate."

Assuming without deciding that the NIT warrant was

-11-

issued in violation of Rule 41(b) and that the violation was constitutional and not merely procedural, the Court holds that suppression of the evidence obtained through the use of the NIT is not required. Suppression would not deter police misconduct in future cases of this kind. Based on the intervening amendments to Rule 41(b), there will likely be no future cases involving challenges to a warrant like the NIT warrant. Defendant has cited no evidence that the FBI agents who presented the NIT warrant to the Magistrate Judge in the Eastern District of Virginia did so with the intent to evade Rule 41(b) or with reckless disregard for the limits of the Magistrate Judge's authority or acted in any way with gross negligence. Defendant only argues that the investigators should have reasonably known that the Magistrate Judge lacked authority to issue the NIT warrant in light of the general case law on Rule 41(b) and what were at the time proposed amendments to Rule 41(b). The Court finds Defendant's argument to be unpersuasive. Defendant's contentions go to the reasonableness of the government's chosen course of action. In other words, Defendant argues the government acted negligently in this instance. A single incident of negligence is not the kind of police malfeasance the exclusionary rule exists to deter.

    The Court also rejects Defendant's argument that the NIT warrant was void *ab initio*. Some courts have concluded that the NIT warrant was void *ab initio* because the Magistrate Judge lacked authority to issue the warrant. The Sixth Circuit has held that warrants issued without authority under state law are void *ab initio*. However, the Sixth Circuit has never held that a warrant issued by a United States Magistrate Judge in violation of Federal Rule of Criminal Procedure 41(b) is void *ab initio*. . . . And even in cases where the warrant issued by a state court judge was void *ab initio*, the Court of Appeals has not categorically excluded evidence seized with such a warrant. Therefore, the Court has no reason to conclude that the NIT warrant was void *ab initio*, and even if it was, the exclusionary rule does not mandate suppression of the evidence against Defendant.

Moorehead, 1:15-cr-10077-STA-1, at 8-16 (internal citations and footnotes omitted).[5]

---

[5] After Judge Anderson issued his opinion in Moorehead, three of

-12-

The court finds that the Leon good-faith analysis articulated in Workman, Horton, Levin, and Moorehead applies equally to Hinds's challenge to the NIT warrant. Even assuming, *arguendo*, that the magistrate judge lacked authority to issue the NIT warrant, that the violation was constitutional and not merely procedural, and that the warrant was void *ab initio*, the court nevertheless finds suppression is not warranted in this case.[6] See Levin, 874 F.3d at 323-24; Horton, 863 F.3d at 1052; Workman, 863 F.3d at 1320; Moorehead, 1:15-cr-10077-STA-1, at 13; see also Master, 614 F.3d at 242.

Although evidence obtained in violation of the Fourth Amendment may be subject to exclusion at trial, "[e]xclusion is not a personal constitutional right" but instead is intended "to deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, 236 (2011). Because "[e]xclusion exacts a heavy toll on both the judicial system and society at large," not all violations of the Fourth Amendment result in the exclusion of evidence. Id. at 237. "Our cases hold that society must swallow this bitter pill [of exclusion] when necessary, but only as a 'last resort.'" Id.

---

the four cases cited in Moorehead where motions to suppress had been granted by the district court – Workman, Horton, and Levin - were subsequently reversed on appeal.

[6] While Leon identified specific situations where the good-faith exception does not apply, see Leon, 468 U.S. at 923 & n.24, Hinds does not argue that any of those situations apply to the NIT warrant. See Workman, 863 F.3d at 1318.

-13-

(quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)). Under Leon, unlawfully obtained evidence is not subject to suppression when the executing officers "act with an objectively 'reasonable good-faith belief' that their conduct is lawful or when their conduct involves only simple, 'isolated' negligence . . . ." Workman, 863 F.3d at 1317 (quoting Davis, 564 U.S. at 238). To assess whether exclusion is demanded, a "rigorous weighing of [] costs and deterrence benefits" is necessary. Davis, 564 U.S. at 238. In particular, because the extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct, the cost-benefit analysis should focus on the "flagrancy of the police misconduct" and on whether the police misconduct was "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." United States v. Fisher, 745 F.3d 200, 201 (6th Cir. 2014) (quoting Herring, 555 U.S. at 143-44).

Here, the government "presented the magistrate judge with a request for a warrant, containing a detailed affidavit from an experienced officer, describing in detail its investigation, including how the NIT works, which places were to be searched, and which information was to be seized." Levin, 874 F.3d at 323. There is no evidence that the government acted in bad faith or otherwise engaged in deliberate, reckless, or grossly negligent conduct in allegedly disregarding Hinds's Fourth Amendment rights.

-14-

"To the extent a mistake was made in issuing the warrant, it was made by the magistrate judge, not by the executing officers, and the executing officers had no reason to suppose that a mistake had been made and the warrant was invalid." Id. As the court explained in Horton, "we . . . will not find an obvious deficiency in a warrant that a number of district courts have ruled to be facially valid." Horton, 863 F.3d at 1052 (citations omitted); see also Workman, 863 F.3d at 1321 ("But if a violation took place, it has escaped the notice of eight federal judges who have held that the same warrant complied with federal law and the federal rules"). Moreover, "[b]ecause Rule 41 has been updated to authorize warrants exactly like this one, there is no need to deter law enforcement from seeking similar warrants." Horton, 863 F.3d at 1052; see also Levin, 874 F.3d at 323 n.7 ("Any deterrent effect is further limited by the fact that Rule 41 has been amended and now appears to allow a magistrate to issue NIT warrants such as the one at issue here.").

Hinds raises several arguments against the application of the good-faith exception. First, he argues that the Leon good-faith exception should *never* apply when law enforcement relies on a search warrant that is void *ab initio*.[7] This argument was considered by the Sixth Circuit in Master, a case in which a search

---

[7] While Hinds candidly acknowledges in his motion that this argument was rejected in Master, he states that he raises the argument in order to preserve Hinds's appellate rights.

-15-

warrant signed by a Tennessee general sessions judge was found to be void *ab initio* because the warrant was for a residence located outside of the judge's jurisdiction.  Master, 614 F.3d at 238.  In considering the applicability of the Leon good-faith exception, the court discussed its prior opinion in United States v. Scott, 260 F.3d 512, 515 (6th Cir. 2001), where the court had found a search warrant signed by a retired judge to be void *ab initio* and rejected the application of the good-faith exception because Leon "left untouched the probable cause standard and the various requirements of a valid warrant.  At the core of these requirements is that the warrant be issued by a neutral and detached judicial officer." Master, 614 F.3d at 241 (quoting Scott, 260 F.3d at 516) (internal quotations omitted).  The court in Master observed that "we believe that the Supreme Court's evolving suppression rulings in Fourth Amendment cases require clarification or modification of our precedent in Scott."  Id. at 243.  The court stated that "[w]hile it appears at first blush that suppression might be inappropriate in this case, we will remand the case to the district court for the purposes of re-examining the facts and balancing the interests as required by Herring."  At a minimum, Master stands for the principle that the Leon good-faith exception *can* be applied to warrants void *ab initio*.  At least one other appellate court has agreed with Master, holding that "[o]ur review of relevant Supreme Court precedent leads us to a similar conclusion: that the Leon

-16-

exception can apply to warrants void *ab initio* like this [NIT warrant]." Horton, 863 F.3d at 1050 (discussing Master); see also Workman, 863 F.3d at 1319 ("In our view, Herring and Evans govern, requiring application of the Leon exception when the search is based on a warrant exceeding the issuing judge's authority."); Moorehead, 1:15-cr-10077-STA, at 15-16 ("even in cases where the warrant issued by a state court judge was void *ab initio*, the Court of Appeals has not categorically excluded evidence seized with such a warrant") (citing Master, 614 F.3d at 242).

Second, Hinds asserts that the magistrate judge who signed the NIT warrant is comparable to the retired judge who signed the warrant in Scott, and as a result, this court should reject the application of Leon as the Sixth Circuit did in Scott. In addition to the questionable viability of Scott's good-faith analysis post-Herring (see discussion of Master above), Scott is distinguishable from the instant case because the retired judge in Scott, on the day the warrant was signed, had no authority to sign any search warrants.  See United States v. Franklin, 284 F. App'x 266, 272 (6th Cir. 2008) (unpublished) ("In Scott, however, the judge in question was no longer a judge, as he was retired.  As a retired judge, he had no more authority to grant warrants than the average citizen.").  In contrast, the magistrate judge who signed the NIT warrant, at a minimum, certainly had authority to issue the warrant for the district in which she sat, which makes the present case

-17-

more analogous to Master.

Third, Hinds contends that the FBI and DOJ knew that the NIT warrant was either void or "on suspect footing at best." Hinds claims that as early as 2013, the DOJ recognized that Rule 41(b) "did not directly address the special circumstances that arise when officers execute search warrants, via remote access, over modern communications networks such as the Internet." (Ex. 5, Sept. 18, 2013 letter from DOJ to Rules Committee, at 1.) From this, Hinds asserts that the DOJ and FBI objectively knew that the NIT warrant was void or suspect at best, yet they persisted in executing the warrant, thus negating their claim that they reasonably believed the magistrate judge had authority to issue the warrant.

The court finds that there is no evidence in the record to support a finding that the FBI agents who executed the NIT warrant had any knowledge of the proposed amendment to Rule 41(b). Indeed, testimony by the affiant on the NIT warrant in other cases would appear to refute Hinds's claim. See, e.g., United States v. Gaver, No. 3:16-cr-88, 2017 WL 1134814, at *10 (S.D. Ohio Mar. 27, 2017) (finding that affiant "credibly testified" that he was not aware "the DOJ was lobbying to expand the scope of a magistrate judge's authority under Rule 41(b) to encompass such a request. When he presented Magistrate Judge Buchanan with the warrant affidavit, he believed that she had authority to sign it; after she did, he 'absolutely' believed he had a valid warrant."). In any event,

even if the agent was aware, "an awareness that Rule 41 was subject to amendment merely demonstrates recognized ambiguities in the Rule, not that [the government] acted with deliberate disregard for the rule." United States v. Vortman, No. 16-cr-00210, 2016 WL 7324987, at *12 (N.D. Cal. Dec. 16, 2016) (internal quotations omitted).  "[A]ssuming that the [DOJ] attorneys or Assistant United States Attorneys who worked with [affiant] Special Agent Macfarlane in obtaining the NIT Warrant were aware of the Department's efforts to amend Rule 41, this fact, in itself, would be insufficient to show bad faith on the part of the government[.]"  Kim, 2017 WL 5256753, at *7.

### III. RECOMMENDATION

For the reasons above, it is recommended that Hinds's Motion to Suppress Evidence be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

November 21, 2017
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**