IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:17-cr-20058-SHM |
| | ) |
| AUGUST HINDS, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant August Hinds' Motion to Suppress Evidence ("Motion to Suppress"), filed on July 12, 2017. (ECF No. 22.) On November 21, 2017, United States Magistrate Judge Tu M. Pham issued a Report and Recommendation (the "Report"). (ECF No. 44.) The Report recommends that the motion be denied. (Id. at 305.)[1]

On December 4, 2017, Defendant filed a motion to extend the deadline to file objections to the Report to December 12, 2017. (ECF No. 46.) The Court granted the motion on December 6, 2017. (ECF No. 47.) On December 12, 2017, Defendant filed his objections to the Report. (ECF No. 48.)

---

[1] Unless otherwise noted, all in-cite page numbers refer to the PageID number.

For the following reasons, the Court ADOPTS the Magistrate Judge's Report. The Motion to Suppress is DENIED.

I. **BACKGROUND**

This action arises from a nationwide federal investigation into "Playpen," an online child pornography website. (ECF No. 22 at 36.) In February 2015, authorities arrested Playpen's administrator and gained control of the website. (Id.; ECF No. 26 at 108.) In an effort to locate and identify users of Playpen, government investigators placed a copy of the website on a government-controlled server in the Eastern District of Virginia. (ECF No. 26 at 108-09.)

Investigators were unable to identify Playpen's users because of "The Onion Router" ("TOR") technology. (ECF No. 22 at 37; ECF No. 26 at 107-09.) TOR technology masked Playpen users' identifying information. (Id.) To circumvent that technology, investigators sought to install Network Investigative Technique ("NIT") technology on the government-controlled server. (ECF No. 22 at 37; ECF No. 26 at 109.) The NIT technology would infiltrate the computers of Playpen users and gather users' identifying information despite TOR technology. (ECF No. 22 at 37.)

Before installing the NIT technology, investigators applied for a search warrant (the "NIT warrant"). (ECF No. 22 at 39-40; ECF No. 26 at 109-10.) The NIT warrant provided that information could be collected from any computer that accessed the

Playpen server, no matter where the computer was located. (ECF No. 22 at 39.) On February 20, 2015, a federal magistrate judge in the Eastern District of Virginia authorized the NIT warrant. (Id. at 39-40.)

Investigators operated Playpen on the government-controlled server for approximately two weeks and collected users' information. (Id. at 36; ECF No. 26 at 109.) A Playpen user with the user name "lovemuffin" was identified. (ECF No. 22 at 40.) Investigators served a subpoena on Comcast, an internet service provider, requesting information about the IP address associated with lovemuffin's account. (Id.) The subpoena produced a physical address in Memphis, Tennessee. (Id.; ECF No. 26 at 110.) Investigators identified Defendant as a resident at the address and obtained a search warrant for the residence from a federal magistrate judge in the Western District of Tennessee. (ECF No. 22 at 40; ECF No. 26 at 110.) On September 3, 2015, government agents executed the search warrant at Defendant's residence and seized a computer, a cell phone, thumb drives, CDs, and DVDs. (ECF No. 22 at 40-41.)

On March 8, 2017, a federal grand jury returned a one-count indictment against Defendant. (ECF No. 1.) The indictment charges Defendant with accessing a website and server with the intent to view child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). (Id. at 1.)

3

On July 12, 2017, Defendant filed the Motion to Suppress. (ECF No. 22.) Defendant argues that the magistrate judge in the Eastern District of Virginia lacked authority to issue the NIT warrant. (Id. at 45-47.) Defendant also argues that the good faith exception should not apply. (Id. at 48-54.)

The Court referred the Motion to Suppress to Magistrate Judge Pham. (ECF No. 23.) After a hearing, the Magistrate Judge entered his Report and Recommendation. (ECF No. 44.) The Report recommends that the Motion to Suppress be denied. (Id. at 305.)

## II. JURISDICTION & STANDARD OF REVIEW

A district court has the authority to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion." 28 U.S.C. § 636(b)(1)(B). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The district court has appellate jurisdiction over any decisions the magistrate judge issues pursuant to such a referral. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a). The standard of review depends on the nature of the matter considered by the magistrate judge. "[U]pon proper objection by a party, a district

4

court must review *de novo* a magistrate judge's ruling on a motion to suppress." United States v. Quinney, 238 F. App'x 150, 152 (6th Cir. 2007) (citing 28 U.S.C. § 636(b)(1); United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001)).

The Court need not review -- under a *de novo* or any other standard -- those aspects of a report and recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150-52 (1985). Objections to any part of a Magistrate Judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995); see also Arn, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute."). A general, frivolous, or conclusory objection will be treated as if no objection had been made. Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991); see also Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986) ("[T]he district court need not provide *de novo* review where the objections are '[f]rivolous, conclusive or general.'" (internal quotations omitted)).

**III. ANALYSIS**

Defendant objects to two of the Report's conclusions of law. Defendant contends that the Report erroneously concludes "that the United States' conduct involves, at most, simple neg-

5

ligence" and that the good-faith exception applies. (ECF No. 48 at 312.) Defendant also objects to the Report's conclusion "that the Leon good-faith exception can be applied to warrants void *ab initio*," although Defendant concedes that "[t]he [Report's] holding on this issue is correct under existing circuit precedent." (Id. at 316.)

**A. Whether Defendant Can Overcome The Good-Faith Exception**

Defendant argues that the Report erroneously concludes that Defendant "cannot overcome the Leon good-faith exception." (Id. at 312.) Defendant contends that "there is no evidence that the [Federal Bureau of Investigation] or [Department of Justice] ever even examined the text of Fed. R. Crim. P. 41(b) to determine whether the magistrate had jurisdiction to issue the warrant." (Id. at 313.) Defendant argues that the Report "suggests that a magistrate's issuance of a warrant may excuse the government's initial failures in presenting the warrant to the wrong judge," and that "this suggestion is inconsistent with Sixth Circuit precedent." (Id. at 314.) Defendant also disputes the Report's conclusion that there is no evidence to suggest the FBI agents who executed the NIT warrant had knowledge of a proposed amendment to Rule 41(b). (Id. at 315.)

Suppression is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the

6

party aggrieved." United States v. Leon, 486 U.S. 897, 909 (1984) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring v. United States, 555 U.S. 135, 144 (2009). Central to the question of suppression is "the culpability of the law enforcement conduct." Id. at 143.

In Leon, the Supreme Court created an exception to the exclusionary rule for evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. at 905. "The exclusionary rule does 'not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated.'" United States v. McPhearson, 469 F.3d 518, 525 (6th Cir. 2006).

The Sixth Circuit has explained the limits the Leon good-faith exception:

> (1) if the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;
> (2) if the issuing magistrate wholly abandoned his judicial role;
> (3) if the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or in other words, where the warrant application was supported by [nothing] more than a 'bare bones' affidavit;

7

> (4) if the warrant may be so facially deficient -- i.e., failing to particularize the place to be searched or the things to be seized -- the executing officers cannot reasonably presume it to be valid.

United States v. Van Shutters, 163 F.3d 331, 337 (6th Cir. 1998) (internal quotations omitted).

As the Report correctly concludes, none of those limitations applies here. "There is no evidence that the government acted in bad faith or otherwise engaged in deliberate, reckless, or grossly negligent conduct in allegedly disregarding Hinds's Fourth Amendment rights." (ECF No. 44 at 300.) There is also no indication that the magistrate judge "wholly abandoned" her judicial role, or that the affidavit lacked an "indicia of probable cause." Leon, 468 U.S. at 923.

Defendant argues that the Report is inconsistent with United States v. Scott, in which the Sixth Circuit held that the good-faith exception did not apply when the warrant was signed by a retired judge that lacked authority to issue the warrant. 260 F.3d 512, 513-514 (6th Cir. 2001). As explained in the Report, "Scott is distinguishable from the instant case because the retired judge in Scott, on the day the warrant was signed, had no authority to sign any search warrants." (ECF No. 44 at 303.) In this case, the magistrate judge who signed the NIT warrant had the authority to issue warrants for the district in which she sat. (Id.)

The Court ADOPTS the Report's conclusion that suppression is not warranted because the good-faith exception in Leon applies.

**B. Whether the Good-Faith Exception Can Apply to Search Warrants That Are Void *Ab Initio***

Defendant concedes that the Report's conclusion that the good-faith exception can apply to warrants void *ab initio* "is correct under existing circuit precedent." (ECF No. 48 at 316.) Defendant "asserts an objection to this aspect of the [Report] to preserve [Defendant's] appellate rights." (Id.)

The four circuits that have analyzed the same NIT warrant at issue in this case have concluded that the good-faith exception may apply to a warrant void *ab initio*. See United States v. Horton, 863 F.3d 1041 (8th Cir. 2017); United States v. Levin, 874 F.3d 316 (1st Cir. 2017); United States v. Workman, 863 F.3d 1313 (10th Cir. 2017); United States v. McLamb, No. 17-4299, 2019 WL 541851 (4th Cir. Jan. 25, 2018).

The Sixth Circuit has also held that the good-faith exception can apply to a warrant void *ab initio*. United States v. Master, 614 F.3d 236 (6th Cir. 2010). In Master, a search warrant was issued by a state judge who lacked the authority to do so under state law. Id. at 239. The Sixth Circuit held that when a warrant is issued by a judge who lacks the authority to

9

do so, the result is not automatic suppression of the evidence obtained as a result of the warrant. Id. at 241-43. The court remanded the case and instructed the lower court to "re-examin[e] the facts and balanc[e] the interests as required by Herring." Id. at 243. Master stands for the proposition that the good-faith exception to the exclusionary rule is not foreclosed where a warrant is void *ab initio*.

The Court ADOPTS the Report's conclusion that suppression is not warranted because the good-faith exception in Leon can apply to warrants that are void *ab initio*.

**IV. CONCLUSION**

The Report is ADOPTED. The Motion to Suppress is DENIED.


So ordered this 30th day of January, 2018.


                                        /s/ Samuel H. Mays, Jr.
                                        SAMUEL H. MAYS, JR.
                                        UNITED STATES DISTRICT JUDGE